## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADAM MURPHY and JULIANNE SHAPIRO, individually and on behalf of all others similarly situated, | : : : : | Case No. _____ |
| Plaintiffs, | : : | CLASS ACTION COMPLAINT |
| vs. | : : | JURY TRIAL DEMANDED |
| KIA AMERICA, INC. and HYUNDAI MOTOR AMERICA CORPORATION, | : : : | |
| Defendants. | : : | |

Plaintiffs, ADAM MURPHY and JULIANNE SHAPIRO through their attorneys, individually and on behalf of the proposed Classes, state and allege as follows:

## INTRODUCTION

1.      Plaintiffs bring this action on behalf of themselves and on behalf of Classes of similarly situated persons or entities who purchased or leased vehicles manufactured and sold by Defendants Kia America, Inc. ("Kia") and Hyundai Motor America Corporation ("Hyundai") (together, "Defendants"), which do not include an engine immobilizer.

2.      Defendants manufacture and sell motor vehicles in the United States and Pennsylvania. These products include popular models like the Kia Soul, Kia Sportage, Kia Sorento, Kia Forte, Hyundai Sonata, and Hyundai Santa Fe.

3.      Kia vehicle models from 2011-2021 and Hyundai models from 2015-2021 (collectively, "Vehicles") suffer from a significant defect: they do not include an engine immobilizer.

4.      Engine immobilizers are designed and used to prevent vehicle theft when a vehicle is left unattended. Engine immobilizers work by transmitting a code to the vehicle when the car's

key is inserted in the ignition switch or a key fob is inside the vehicle. Because Defendants' Vehicles lack an immobilizer, thieves can easily start the Vehicles through the steering column without a car's specific smart key by using common objects like a screwdriver, knife, USB charging cord, or other metal object. Videos are readily available online providing would-be criminals with a tutorial on how to easily exploit the missing immobilizer in the Vehicles.

5.      Theft or attempted theft of Defendants' Vehicles is becoming increasingly reported and has risen substantially across the United States generally and in Pennsylvania specifically, as knowledge of the defect is now widespread.

6.      Defendants are aware that their Vehicles lack engine immobilizers. Indeed, immobilizers are required in foreign countries and installed on similar vehicles that Defendants manufacture and sell in those countries. Upon information and belief, Defendants sell other model vehicles in the United States with engine immobilizers.

7.      Plaintiffs, on the other hand, were not aware that their Vehicles lacked engine immobilizers. That information was not reasonably discernable and the price of Plaintiffs' Vehicle at the time of sale was not reduced to reflect the defect nor to alert Plaintiffs to a potential missing component of the vehicle.

8.      Defendants are aware through media and steering wheel replacement part sales that thefts of the Vehicles manufactured and sold by them have increased nationwide.

9.      Despite the rise in Vehicle thefts, Defendants have not issued a recall or offered to install engine immobilizers in the affected Vehicles.

10.     Defendants have announced that after November 1, 2021, all Hyundai and Kia vehicles will come standard with anti-theft immobilizers.[1]

---

[1]   Sasha Lekach, *Kia, Hyundai Offer Owners Security Kits, Locks After Targeted Car Thefts*, Forbes.com (Oct. 3, 2022), https://www.forbes.com/wheels/news/kia-hyundai-car-thefts-

11.     Plaintiffs purchased a Vehicle manufactured by Defendants which suffers from the defect. Plaintiffs would not have purchased the Vehicle had they known about the defect.

12.     As a result of Defendants' unfair and deceptive business practices, consumers of the Vehicles, including Plaintiffs, have suffered an ascertainable loss, injury-in-fact, and otherwise have been harmed by Defendants' conduct.

## PARTIES

13.     Plaintiffs Adam Murphy and Julianne Shapiro are residents of Philadelphia, Pennsylvania.

14.     Defendant Kia America, Inc. is a California corporation with its principal place of business in California.

15.     Defendant Hyundai Motor America Corporation is a California corporation with its principal place of business in California.

## JURISDICTION AND VENUE

16.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d), this Court has original jurisdiction because the aggregate claims of the members of the putative classes exceed $5 million, exclusive of costs, and at least one of the Class members is a citizen of a different state than Defendants.

17.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because all other claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

18.     Defendants regularly and systematically conduct business and sell their products to customers in this District, including to Plaintiffs and the Classes. As such, Defendants are subject

_____

security-kit/.

to the jurisdiction of this Court.

19.      Venue is likewise proper in this district pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this District and regularly conduct business in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I.      THEFTS OF DEFENDANTS' DEFECTIVE VEHICLES

20.      Thefts of Kia and Hyundai vehicles have risen dramatically nationwide and in the Philadelphia region.

21.      According to authorities, thieves are targeting Hyundai and Kia Vehicles "as part of a TikTok challenge that teaches people how to start Hyundais and Kias with the use of a USB cable."[2] "Videos shared on social media show how Defendants' Vehicles can be easily started (and therefore stolen) without keys by using the end of a USB cable, or a screwdriver, because the vehicles are not equipped with immobilizers that require the presence of a key fob with a transponder.[3]

22.      In August 2022, 35 Hyundais and Kias were stolen in Philadelphia, Pennsylvania in one week alone.[4]

23.      In St. Louis, Missouri, Kia and Hyundai thefts account for nearly 77% of all

---

[2]   Walter Perez, *TikTok challenge sparks surge in car thefts across Philadelphia region, police say*, WPVI-TV, (Aug. 30, 2022), https://6abc.com/tiktok-challenge-usb-drive-car-thefts-hyundai-kia-vehicles/12178976/.

[3]   Fox 29 Philadelphia, *Police warn of new social media challenge that targets certain models of cars*, Fox 29 Philadelphia, (Aug. 3, 2022), https://www.fox29.com/news/police-warn-of-new-social-media-challenge-that-targets-these-kinds-of-vehicles.

[4]   Perez, *supra., n. 2.*

vehicles stolen in 2022.[5] St. Louis city officials sent letters to Defendants threatening legal action

if Defendants refused to act within 30 days, claiming, "the companies are contributing to a public

nuisance in the city."[6]

24.     As of August 2022, thefts of Kias and Hyundais accounted for 38% of all car thefts

in Columbus, Ohio.[7]

25.     In Colorado, auto theft is one of the fastest-growing crimes, and Kias and Hyundais have

increasingly been targeted.[8] As of the end of August 2022, over 3,000 Kias and 3,000 Hyundais had

been stolen. In 2019, a little over 200 Kias and 200 Hyundais were stolen statewide in Colorado; the

number doubled to 400 thefts of each manufacturers' cars in 2020, and doubled again in 2021, to

more than 1,000 thefts.[9]

26.     According to CBS Colorado, "[t]he manufacturers say they are aware of what's

happening and that thieves are targeting their keyed ignition vehicles that do not have engine

immobilizer systems. Kia and Hyundai stopped using an anti-theft system in 2011 and now both

companies say they have put them back into their newer models."[10]

27.     In St. Paul, Minnesota, thefts of Kia vehicles increased 1300% as of July 2022 from

---

[5]  Kevin S. Held and Andy Banker, *City threatens to sue Kia and Hyundai, says cars are too easy to steal*, Nexstar Media Wire, (Aug. 30, 2022), https://www.wate.com/news/nexstar-media-wire/city-threatens-to-sue-kia-and-hyundai-says-cars-are-too-easy-to-steal/.

[6]  *Id.*

[7]  Fox 29 Philadelphia, *supra.* n. 3.

[8]  Karen Morfitt, *KIA and Hyundai vehicles an easy target for thieves, and social media is partly the reason why*, CBS Colorado, (Aug. 31, 2022), https://www.cbsnews.com/colorado/news/kia-and-hyundai-vehicles-easy-target-thieves-social-media/.

[9]  *Id.*

[10] *Id.*

all of 2021, while thefts of Hyundai vehicles increased 584%.[11]

28.     Ramsey County, Minnesota, Undersheriff Mike Martin stated, "[t]he Kias and Hyundais have what I call a design flaw that allows them to be stolen easier… All they have to do is break a window and get in and within seconds those cars can be compromised and be started with a USB port or even a pocketknife."[12]

29.     Beginning in the second quarter of 2022, Kias became the most-often stolen vehicle in Minneapolis, Minnesota.[13] To start off the third quarter of the year (August 2022), Kia and Hyundai vehicles were stolen more often than any other make.[14]

30.     Local Minnesota news station Fox 9 detailed the story of Lynda Pierce, whose Kia was stolen twice in a two-month period, which resulted in her paying two auto insurance deductibles on top of needed vehicle repairs.[15] The story noted that Pierce could no longer go to the grocery store or make medical appointments without her Kia.[16]

31.     Authorities told Fox 9 that Kia and Hyundai vehicles "are easier to steal because they lack an electronic security device called an engine immobilizer, making them easier to start

---

[11] Caroline Cummings, *Thefts of Kia and Hyundai cars soar in St. Paul, data show*, CBS Minnesota (July 19, 2022), https://www.cbsnews.com/minnesota/news/thefts-of-kia-and-hyundai-cars-soar-in-st-paul-data-show/.

[12] *Id.*

[13] Rose Schmidt, *Kias and Hyundais now most stolen cars in Minneapolis, data shows*, Fox 9 (Aug. 15, 2022), https://www.fox9.com/news/data-kias-and-hyundais-now-most-stolen-cars-in-minneapolis.

[14] *Id.*

[15] *Id.*

[16] *Id.*

without a key."[17]

32.     According to city police in Milwaukee, Wisconsin, Kia and Hyundai vehicles represented two out of every three vehicles stolen during the first half of 2021.[18]

33.     One car-repair facility owner, quoted by the *Milwaukee Journal Sentinel*, explained, "Kia thieves know they can break the back window without setting off an alarm, unlock the door, quickly peel back the steering column, and either use a screwdriver or a USB port to crank the car and go."[19]

## II.    DEFENDANTS' DEFECTIVE VEHICLES

34.     Defendants' Vehicles suffer from a defect because they do not include an engine immobilizer.

35.     An engine immobilizer is designed to prevent vehicle theft when a vehicle is left unattended. An engine immobilizer works by transmitting a code to the vehicle when the key is inserted in the ignition switch or a key fob is inside the vehicle.

36.     If Defendants' Vehicles included an engine immobilizer, they would be more difficult to steal because a thief could not start or move the Vehicle without the Vehicle's key.

37.     Federal regulations require that a vehicle's engine cannot be started and that a vehicle cannot move when the vehicle's key is not present.

38.     Each vehicle must have a starting system which, whenever the key is removed from the starting system prevents: (a) the normal activation of the vehicle's engine or motor; and (b)

---

[17] *Id.*

[18] Clifford Atiyeh, *Hyundai, Kia Take Action after Cars Become Theft Targets in Milwaukee*, Car and Driver (Dec. 11, 2021), https://www.caranddriver.com/news/a38491394/hyundai-kia-thefts-milwaukee-action/.

[19] *Id.*

either steering, or forward self-mobility, of the vehicle, or both. 49 C.F.R. § 571.114.

39.     Federal Motor Vehicle Safety Standard ("FMVSS") 114 serves two purposes: to prevent auto theft and to prevent vehicle rollaway.

40.     Defendants' Vehicles suffer from a defect and do not comply with FMVSS 114 because when the key is removed from the starting system, the Vehicle's engine or motor can be activated and removal of the key does not prevent steering or forward self-mobility.

41.     If Defendants' Vehicles were manufactured to comply with FMVSS 114, they would not be stolen at such alarming rates because when the key is removed from the starting system, both steering and forward self-mobility would be prevented.

42.     A vehicle that does not comply with FMVSS 114 is not a reliable or safe vehicle and is less valuable than a vehicle that complies with FMVSS 114.

43.     Defendants knew their Vehicles were defective in that they did not have an engine immobilizer and did not comply with FMVSS 114, and they failed to disclose these defects to consumers like Plaintiffs and the putative Classes.

44.     Defendants knew that it was unsafe and dangerous for a Vehicle not to have an engine immobilizer.

45.     In response to the significant rise in theft of their Vehicles, spokespeople for Kia and Hyundai told *Car and Driver* magazine that every new Hyundai now has standard engine immobilizers, and that all 2022 Kias will also have the engine immobilizer fitted as standard equipment.[20]

46.     Defendants have not provided a solution to the thousands of Kia and Hyundai owners whose Vehicles lack engine immobilizers.

---

[20] *Id.*

### III.    PLAINTIFFS' USE OF DEFENDANTS' DEFECTIVE VEHICLES

47.    On or about October 16, 2022, Plaintiffs discovered that their 2016 Kia Soul, which was purchased in Richmond, California in 2017 from an authorized Kia dealership, had been stolen in Philadelphia. Plaintiffs had last seen their vehicle on or about October 15, 2022.

48.    Plaintiffs filed a police report on or about October 16, 2022, and the vehicle was recovered approximately one week later in Philadelphia. The inside of the vehicle was damaged, and vehicle parts were damaged.

49.    As of December 12, 2022, Plaintiffs still are unable to use their vehicle and are awaiting replacement parts to complete the repairs. Plaintiffs have not been provided with a timeline for when the replacement parts will arrive and have been informed that there is a backlog in replacing parts, apparently due to the surge in thefts and resulting damage to defective Kia vehicles that lack engine immobilizers.

50.    Due to these repair delays and backlog in Kia car parts, Plaintiffs have needed to pay for rental vehicles, causing them to incur additional expenses.

51.    The full extent of the costs resulting from the theft are not yet determined.

52.    Plaintiffs have suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Vehicle's defect including, but not limited to, overpayment for their Kia Soul, and expenses resulting directly from the theft of their Kia Soul.

53.    Plaintiffs had taken their Kia Soul to a Kia dealership in Philadelphia for multiple repairs on or about October 14, 2022, just two days prior to the theft.  Plaintiffs asked if the vehicle had any issues that should be addressed but were not informed about the lack of an engine immobilizer despite Defendants' knowledge of this defect.

54.    The defect was present in their Kia Soul since 2017 when Plaintiffs purchased the

vehicle, but the defect was unknown to Plaintiffs until 2022.

55.     Plaintiffs acted reasonably and diligently to discover any defects with their vehicle when they, among other steps taken, sought repairs for their vehicle and requested information regarding any defects with the vehicle.

56.     Plaintiffs would not have purchased Defendants' defective Vehicle if they had known it was defective and more susceptible to theft.

## CLASS ACTION ALLEGATIONS

57.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23 on behalf of Classes of individuals defined as:

**Nationwide Class**:

All persons or entities who, within the applicable statute of limitations period, purchased or leased a Vehicle manufactured by Kia America, Inc. or Hyundai Motor America without an engine immobilizer (the "Class").

**Pennsylvania Class:**

All persons or entities in Pennsylvania who, within the applicable statute of limitations period, purchased or leased a Vehicle manufactured by Kia America, Inc. or Hyundai Motor America without an engine immobilizer (the "Pennsylvania Class").

58.     Plaintiffs reserve the right to modify or amend the definition of the proposed Classes and/or to add subclasses, if necessary, before this Court determines whether class certification is appropriate.

59.     Excluded from the Classes are Defendants, their present and former parent companies, subsidiaries and affiliates, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies, and instrumentalities.

60.     Plaintiffs seek only damages and injunctive relief and are not seeking for themselves or any Class member recovery or compensation for personal injuries to body and mind,

including wrongful death or emotional distress.

61.     This action is brought and may be properly maintained on behalf of each Class member.

62.     *Numerosity of the Classes*: The members of the Classes are so numerous that joinder of all members would be impracticable. While the exact number of Class members is presently unknown to Plaintiffs and can only be determined through appropriate discovery, Plaintiffs believe the Classes are likely to include thousands of members based on the fact that Defendants distribute their Vehicles nationwide.

63.     The definitions of the Classes identify unnamed class members by describing a set of common characteristics sufficient to allow a member of that group to identify themselves as having a right to recover damages from Defendants. Other than by direct notice by mail or email, proper and sufficient notice of this action may be provided to the Classes through notice published in newspapers or other publications.

64.     *Commonality:* This action involves common questions of law and fact. The questions of law and fact common to both Plaintiffs and the Classes include, but are not limited to, the following:

> a.     Whether Defendants violated the Magnuson-Moss Warranty Act;
>
> b.     Whether Defendants violated the California Consumers Legal Remedies Act;
>
> c.     Whether Defendants engaged in unlawful, unfair and fraudulent business practices in violation of the California Business and Professions Code;
>
> d.     Whether Defendants violated the Song-Beverly Consumer Warranty Act;
>
> e.     Whether Defendants breached their implied warranties of merchantability with respect to the Vehicles;
>
> f.     Whether Defendants were unjustly enriched by the sale of the Vehicles;

g.       Whether Defendants violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law;

h.       The appropriate nature of class-wide equitable relief; and

i.       The proper method or methods to determine and measure Plaintiffs' and the Classes' damages.

65.     *Typicality*: Plaintiffs' claims are typical of all members of the Classes. The evidence and the legal theories regarding Defendants' alleged wrongful conduct committed against Plaintiffs and the Classes are substantially the same because all putative Class members purchased or leased Defendants' Vehicles and all putative Class members overpaid or suffered a loss in value of their Vehicles. Accordingly, in litigating their claims, Plaintiffs will also serve the interests of the Classes.

66.     *Adequacy*: Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs retained competent counsel experienced in class action litigation to ensure such protection. There are no material conflicts between the claims of the representative Plaintiffs and the Classes that would make class certification inappropriate. Additionally, Plaintiffs' counsel are competent to advance the interests of the Classes having been designated as Lead Counsel in numerous class cases. Plaintiffs and their counsel intend to prosecute this action vigorously.

67.     *Predominance and Superiority*: This matter is properly maintained as a class action under Fed. R. Civ. P. 23(b)(3) because the common questions of law and fact identified herein, and to be identified through discovery, predominate over questions that may affect only individual Class members. Further, a class action is superior to all other available methods for the fair and efficient adjudication of this matter because the injuries suffered by the individual Class members are relatively small. As such, the expense and burden of individual litigation would make it virtually impossible for Plaintiffs and the Classes to individually seek redress for Defendants'

wrongful conduct. Even if any individual person or group(s) of the Classes could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. The class action device is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court. In contrast, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party (or parties) opposing the Classes and would lead to repetitious trials of the numerous common questions of law and fact. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this action. Absent a class action, Plaintiffs and the Classes will continue to suffer losses, thereby allowing Defendants' violations of law to proceed without remedy and allowing Defendants to retain the proceeds of their ill-gotten gains.

## CAUSES OF ACTION

## COUNT I

## VIOLATION OF THE MAGNUSON MOSS WARRANTY ACT

### (On Behalf of Plaintiffs and the Class)

68.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

69.     Congress enacted the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 *et seq.*, to address the widespread misuse of merchants' express warranties and to protect consumers from deceptive warranty practices. The MMWA imposes civil liability on any "warrantor" who fails to comply with any obligation under a written or corresponding implied warranty. *Id.*

§ 2310(d)(1).

70.   Defendants' Vehicles are "consumer products" as defined in 15 U.S.C. § 2301(1).

71.   Plaintiffs and the Class are "consumers" as defined in 15 U.S.C. § 2301(3).

72.   Defendants are "suppliers" and "warrantors" as those terms are defined in 15 U.S.C. § 2301(4) & (5), respectively.

73.   15 U.S.C. § 2310(d)(1) provides that "a consumer who is damaged by the failure of the supplier, warrantor, or service contractor to comply with any obligation under [the MMWA], or a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief" in any court of competent jurisdiction in any state or appropriate United States District Court.

74.   Defendants provided Plaintiffs and the Class with an implied warranty of merchantability in connection with the purchase or lease of their Vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, Defendants warranted that the Vehicles were fit for their ordinary purpose and would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

75.   Defendants breached their implied warranties, as described herein, and are therefore liable to Plaintiffs and the Class under 15 U.S.C. § 2310(d)(1). The defect rendered the Vehicles unmerchantable and unfit for their ordinary use of driving when they were sold or leased, and at all times thereafter.

76.   Plaintiffs and the Class used their respective Vehicles in a manner consistent with their intended use and performed every duty required of them under the terms of the warranty, except as may have been excused or prevented by Defendants' conduct or by operation of law.

77.     Plaintiffs and the Class seek to recover damages resulting directly from Defendants'

breach of their implied warranties and their deceitful and unlawful conduct described herein. These

damages include, but are not limited to, overpayment for the Vehicles, insurance deductibles to get

the stolen Vehicles repaired, the cost to replace other property stolen in connection with the thefts

of their Vehicles, the loss of use of their respective Vehicles, costs associated with the replacement

of the totaled Vehicles, and/or the diminution in value of stolen Vehicles that were not totaled.

78.     The MMWA also permits "other legal and equitable" relief. 15 U.S.C. § 2310(d)(1).

Plaintiffs and the Class also seek to enjoin Defendants from acting unlawfully as alleged herein.

79.     Plaintiffs and the Class are entitled to costs and expenses, including attorneys' fees

in the Court's discretion. 15 U.S.C. § 2310(d)(2).

80.     The applicable statute of limitations for this claim has been tolled by the

discovery rule and/or fraudulent concealment.

## COUNT II

## VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT CALIFORNIA CIVIL CODE 1750, §§ *ET SEQ.*

### (On Behalf of Plaintiffs and the Class)

81.     Plaintiffs repeat and re-alleges each and every allegation contained in the preceding

paragraphs as if fully set forth herein.

82.     Plaintiffs bring this claim on behalf of themselves and the Class.

83.     This cause of action is brought under the California Consumers Legal Remedies

Act California Civil Code 1750 §§ *et seq*. ("CLRA"). Plaintiffs and members of the Class are

consumers as defined by California Civil Code § 1761(d), and the Vehicles constitute goods within

the meaning of the CLRA.

84.     Defendants have violated, and continue to violate, the CLRA by engaging in the

following deceptive practices proscribed by California Civil Code § 1770(a) in connection with transactions intended to result in, and that did result in, the sale and/or lease of the Class Vehicles to Plaintiffs and members of the Class in violation of, inter alia, the following provisions:

    a.  Representing that the goods have characteristics, uses, or benefits which they do not have (Cal. Civ. Code §1770(a)(5));

    b.  Representing that the goods are of a particular standard, quality, or grade if they are of another (Cal. Civ. Code § 1770(a)(7));

    c.  Advertising goods with the intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9));

    d.  Representing that a transaction involves rights, remedies, or obligations that it does not have or involve (Cal. Civ. Code § 1770(a)(14)); and

    e.  Representing that the goods have been supplied in accordance with a previous representation when they have not (Cal. Civ. Code § 1770(a)(16)).

85.    Plaintiffs and members of the Class, in purchasing/leasing and using the Vehicles, did reasonably act in response to Defendants' above representations or would have considered the omitted facts set forth herein as material to their purchasing/leasing decision. Plaintiffs and members of the Class have suffered damages by the wrongful acts and practices of Defendants that are in violation of California Civil Code § 1781.

86.    Defendants engaged in unfair and deceptive acts, omissions, and practices by representing to Plaintiffs and the members of the Class that the Class Vehicles were safe, reliable, and free from defects and by failing to disclose that the Vehicles had the defect that rendered the Vehicles easy to steal, unsafe, and worth less than they would be if they did not have the defect.

87.    The representations regarding the Vehicles were material to Plaintiffs and the members of the Class. Defendants intended that Plaintiffs and the members of the Class would rely on these representations and they did, in fact, rely on the representations.

88.    Had Plaintiffs and the Class known this information, they would not have purchased

or would have paid less for their Vehicles.

89.     In accordance with California Civil Code § 1780(a), Plaintiffs and members of the Class seek injunctive relief for Defendants' violations of the CLRA.

90.     The applicable statute of limitations for this claim has been tolled by the discovery rule and/or fraudulent concealment.

## COUNT III

### UNLAWFUL, UNFAIR AND FRAUDULENT BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17200, *ET SEQ.*

### (On Behalf of Plaintiffs and the Class)

91.     Plaintiffs repeat and reallege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

92.     Plaintiffs bring this claim on behalf of themselves and the Class.

93.     The California Business and Professions Code (also known as the Unfair Competition Law ("UCL")) defines unfair competition to include any "unfair," "unlawful," or "fraudulent" business act or practice.

94.     Defendants have violated, and continue to violate, the UCL by representing to Plaintiffs and the members of the Class that the Vehicles are safe, reliable, and free from defects and by failing to disclose that the Vehicles had the defect which rendered the Vehicles easy to steal, unsafe, and worth less than they would be, if they did not have the defect.

95.     By engaging in the above-described acts and practices, Defendants have committed an unfair business practice within the meaning of the UCL. Plaintiffs and the Class members have suffered substantial injury they could not have reasonably avoided other than by not purchasing or leasing the Vehicles.

96.     Defendants' acts and practices have deceived and/or are likely to deceive Class

members and thus constitute a fraudulent business practice. Defendants uniformly marketed and advertised the Vehicles as safe, reliable, and free from defect when, in fact, they are not because they contain a defect that rendered the Vehicles easy to steal, unsafe, and worth less than they would be, if they did not have the defect.

97.     As discussed above, Plaintiffs and members of the Class purchased and/or leased the Vehicles from Defendants and/or their authorized agents. Plaintiffs and members of the Class were injured in fact and lost money as a result of such acts of unfair competition.

98.      The injuries suffered by Plaintiffs and members of the Class greatly outweigh any potential countervailing benefit to consumers or to competition.  The injuries suffered by Plaintiffs and the Class should have or could have been reasonably avoided.

99.     Defendants received the funds paid by Plaintiffs and the Class members and profited by misrepresenting the properties and quality of the Vehicles that they otherwise would not have sold. Defendants' revenues attributable thereto are, thus, directly traceable to the substantial amount of money paid by Plaintiffs and members of the Class.

100.    Plaintiffs and members of the Class continue to be injured by Defendants' conduct and as a result do not have an adequate remedy at law. Plaintiffs and members of the Class request this Court to enjoin Defendants from continuing to violate the UCL.

101.    The unlawful, unfair, and fraudulent conduct described herein is ongoing and continues to this date. Plaintiffs and members of the Class are therefore entitled to relief as appropriate for this cause of action.

102.    The applicable statute of limitations for this claim has been tolled by the discovery rule and/or fraudulent concealment.

## COUNT IV

## VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT, CAL. CIV. CODE § 1791, *ET SEQ.*

### (On Behalf of Plaintiffs and the Class)

103.   Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs as if fully set forth herein.

104.   Plaintiffs bring this claim on behalf of themselves and the Class.

105.   Plaintiffs and the Class members who purchased or leased the Vehicles are "buyers" or "lessees" within the meaning of Cal. Civ. Code § 1791(b) and (h).

106.   The Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

107.   Defendants are "manufacturers" of the Vehicles within the meaning of Cal. Civ. Code § 1791(j).

108.   Defendants impliedly warranted to Plaintiffs and the Class members that the Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792. However, the Vehicles do not have the quality that a buyer would reasonably expect.

109.   Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

   a.   Pass without objection in the trade under the contract description.

   b.   Are fit for the ordinary purposes for which such goods are used.

   c.   Are adequately contained, packaged, and labeled.

   d.   Conform to the promises or affirmations of fact made on the container or label.

110.   Plaintiffs and members of the Class purchased or leased the Vehicles, manufactured

by Defendants, from Defendants by and through their authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Vehicles when bought from a third party. At all relevant times, Defendants were the manufacturers, distributors, warrantors, and/or sellers of the Vehicles. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.

111.    Defendants failed to inform Plaintiffs and members of the Class of the existence of the defect and associated safety hazard and failed to provide a suitable repair or replacement of the defective components free of charge within a reasonable time.

112.    Defendants impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

113.    Contrary to the applicable implied warranties, the Vehicles were not free from the Defect, making the Vehicles unfit for their ordinary and intended purpose of providing Plaintiffs and the Class members with reliable, durable, and safe transportation, would not pass without objection in trade, were not adequately labeled, and did not conform to the promises and affirmations on their labels.

114.    The defect is inherent and was present in each Vehicle.

115.    Defendants were provided with notice of the defect by numerous consumer complaints made to authorized dealers nationwide, complaints to the National Highway Traffic Safety Administration, and numerous reports through various media. Affording Defendants a reasonable opportunity to cure their breach of warranties would be unnecessary and futile here because Defendants have known of and concealed the defect and, on information and belief, have refused to repair the defect free of charge within a reasonable time.

116.    Defendants have breached their warranties in violation of Cal. Civ. Code § 1791,

et seq.

117.    As a direct and proximate result of Defendants' breach of their warranties, Plaintiffs and members of the Class have been damaged in an amount to be proven at trial.

118.    Plaintiffs and members of the Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

119.    Plaintiffs and members of the Class seek actual damages, costs, attorneys' fees, and statutory damages as a result of Defendants' willful conduct alleged herein. Plaintiffs and members of the Class also seek reimbursement, replacement of the defective components, and/or the revocation of the purchase or lease of their Class Vehicles, and all other relief available under Cal. Civ. Code § 1794.

120.    The applicable statute of limitations for this claim has been tolled by the discovery rule and/or fraudulent concealment.

## COUNT V

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

### (On Behalf of Plaintiffs and the Class)

121.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

122.    Defendants, as manufacturers of the Vehicles, impliedly warranted to Plaintiffs and the Class that the Vehicles were of merchantable quality and safe for their ordinary and intended use.

123.    Defendants breached the implied warranty of merchantability in connection with the sale and distribution of the Vehicles. While appearing normal, the Vehicles contained defects as set forth herein rendering them less safe and less reliable for personal use.

124.     Had Plaintiffs and the Class known the Vehicles were less safe and less reliable for use, they would not have purchased them.

125.     Defendants did not provide appropriate warranty relief notwithstanding the risks of using the Vehicles. Plaintiffs and the Class reasonably expected, at the time of purchase, that the Vehicles were safe for their ordinary and intended use.

126.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and the Class have sustained damages in an amount to be determined at trial.

127.     The applicable statute of limitations for this claim has been tolled by the discovery rule and/or fraudulent concealment.

## COUNT VI

## UNJUST ENRICHMENT

### (On Behalf of Plaintiffs and the Class)

128.     Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

129.     Plaintiffs and the Class members conferred a tangible and material economic benefit upon Defendants by purchasing the vehicle.  Plaintiffs and Class members would not have purchased, chosen and/or paid for their Vehicle had they known the true risks of owning or using the Vehicle.  Under these circumstances, it would be unjust to and inequitable for Defendants to retain the economic benefits they received at the expense of Plaintiffs and the Class.

130.     Failing to require Defendants to provide remuneration under these circumstances would result in Defendants being unjustly enriched at the expenses of Plaintiffs and the Class members who endure being exposed to the risk of their Vehicles being stolen and can no longer

use their Vehicles safely, or at all.

131.    Defendants' retention of the benefit conferred upon them by Plaintiffs and the Class would be unjust and inequitable.

132.    Plaintiffs and the Class suffered damages in an amount to be determined at trial.

133.    The applicable statute of limitations for this claim has been tolled by the discovery rule and/or fraudulent concealment.

## COUNT VII

### VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

### (On Behalf of Plaintiffs and the Pennsylvania Class)

134.    Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

135.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." 73 Pa. Stat. Ann. § 201-3.

136.    Defendants' design, manufacture, distribution, marketing, advertising, labeling, and sale of the Vehicles constitutes "trade and commerce" under 73 Pa. Stat. Ann. § 201-2(3).

137.    Defendants violated the UTPCPL by representing that the Vehicles have certain safety characteristics and benefits that they do not have (73 Pa. Stat. Ann. § 201-2(4)(v)); and engaging in deceptive conduct which creates a likelihood of confusion or misunderstanding about the Vehicles (73 Pa. Stat. Ann. § 201-2(4)(xxi)).

138.    Defendants' deceptive conduct and their false and misleading statements about the Vehicles' safety and dependability and omissions regarding the Vehicles' defect, which causes the Vehicles to be easily stolen, are facts that a reasonable person would have considered material in

deciding whether to purchase or lease (or how much a person was willing to pay to purchase or lease) the Vehicles.

139.     Defendants' materially misleading statements and deceptive acts and practices were directed at the public at large, including Plaintiffs and members of the Pennsylvania Class, and were likely to mislead reasonable consumers, including Plaintiffs and Pennsylvania Class members.

140.     Had Defendants disclosed all of the material information regarding the Vehicles' defect, Plaintiffs and the other Pennsylvania Class members would not have purchased or leased Vehicles or would have paid less to do so.

141.     Defendants' deceptive acts and practices, and misrepresentations and omissions, have deceived Plaintiffs, and those same business practices have deceived or are likely to deceive other members of the Pennsylvania Class.

142.     Plaintiffs and the other Pennsylvania Class members justifiably acted or relied to their detriment upon Defendants' misrepresentations and omissions of fact, as evidenced by Plaintiffs and the other Pennsylvania Class members' leasing and purchasing of Vehicles.

143.     As a direct and proximate result of Defendants' acts and practices, Plaintiffs and the other Pennsylvania Class members have suffered ascertainable loss and actual damages. Plaintiffs and the other Pennsylvania Class members would not have purchased or leased the Vehicles or would have paid less for them had Defendants disclosed the truth about the Vehicles' defect. Plaintiffs and the other Pennsylvania Class members also suffered diminished value of their Vehicles.

144.     Pursuant to 73 Pa. Stat. Ann. § 201-9.2(a), Plaintiffs and the Pennsylvania Class members seek an order for: actual and treble damages; appropriate injunctive relief (including

requiring Defendants to notify owners and lessees of their Vehicles' defect and to offer to install effective safety equipment at no cost to Plaintiffs and other Pennsylvania Class members); costs; and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Classes, demand a jury trial on all claims so triable and judgment as follows:

A.  Certifying the proposed Nationwide Class, appointing Plaintiffs as representatives of the Nationwide Class, and appointing counsel for Plaintiffs as Lead Counsel for the Nationwide Class;

B.  Certifying the proposed Pennsylvania Class, appointing Plaintiffs as representatives of the Pennsylvania Class, and appointing counsel for Plaintiffs as Lead Counsel for the Pennsylvania Class;

C.  Finding that Defendants violated the Magnuson-Moss Warranty Act;

D.  Finding that Defendants violated the California Consumers Legal Remedies Act;

E.  Finding that Defendants violated the California Business and Professions Code;

F.  Finding that Defendants violated the Song-Beverly Consumer Warranty Act;

G.  Finding that Defendants breached the implied warranty of merchantability;

H.  Finding that Defendants were unjustly enriched by the sale of the Vehicles;

I.  Finding that Defendants violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law;

J.  Awarding damages in an amount according to proof;

K.  Awarding pre- and post-judgment interest at the maximum rate permitted by applicable law;

L.  Ordering appropriate injunctive relief;

M.  Reimbursing all costs, expenses, and disbursements accrued by Plaintiffs in connection with this action, including reasonable attorneys' fees, costs, and expenses pursuant to applicable law and any other basis; and

N.      Awarding such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of the Classes, hereby demands a trial by jury on all issues in this Class Action Complaint that are so triable.


Dated:  December 12, 2022                    Respectfully submitted,

                                             /s/ Douglas A. Abrahams
                                             Joseph C. Kohn
                                             Douglas A. Abrahams
                                             William E. Hoese
                                             Elias A. Kohn
                                             **KOHN, SWIFT & GRAF, P.C.**
                                             One South Broad Street, Suite 2100
                                             Philadelphia, PA 19107
                                             Telephone: (215) 238-1700
                                             jkohn@kohnswift.com
                                             dabrahams@kohnswift.com
                                             whoese@kohnswift.com
                                             ekohn@kohnswift.com

                                             *Attorneys for Plaintiffs*